UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KYLER BRIFFA,

       Plaintiff,                     Case No.  6:23-cv-1837-CEM-EJK

vs.

BRADLEY BEAL,

       Defendant.
_____/

**BEAL'S MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

Defendant, Bradley Beal ("Beal" or "Defendant"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby files this Motion to Dismiss the Second Amended Plaintiff's Complaint, and in support of this motion states as follows:

**INTRODUCTION**

This Motion to Dismiss seeks dismissal of the Seconded Amended Complaint (the "Complaint"), which alleges defamation against Defendant.  The defamation claim brought by the Plaintiff, Kyler Briffa ("Briffa"), is based upon two statements made to the media following an incident that occurred at an NBA basketball game in Orlando on March 21, 2023.  After the game, Beal, a player for the visiting Washington Wizards, confronted Briffa and a friend of Briffa's about comments he

heard them make as Beal was exiting the floor. At a press conference, Beal was questioned about the incident and fan conduct. Rather than speak about the specifics of the incident, Beal chose to speak about the impact of sports gambling and how it has changed fan/player interactions.

Briffa then filed this suit, which had no defamation claim. In response, Beal retained his initial counsel (who no longer represents Beal in this matter). Beal's counsel made statements about the litigation, which would be subject to the litigation privilege. After hearing both the statements at the press conference and statements by prior counsel, Britta chose to amend his complaint to add a single-count claim for defamation. The defamation claim essentially contends that Beal said that Briffa made comments that Briffa denies making. The statements are attached to the Second Amended Complaint as Exhibit 1 and Exhibit 2 and musings. However, neither published statement can form the basis for a defamation claim against Beal.

First, when looking at Exhibit 1 and 2 of the Second Amended Complaint as a whole (the articles that Plaintiff relies upon as basis for his defamation claim) it is clear that the statements are not even about Briffa specifically. Rather, they are general opinions about fan conduct at a sporting event. Second, the statements are not actually about Briffa. They are about somebody who is not named in either publication. The publications make clear that the comments being made are not directed to Briffa, or about anything Briffa allegedly said. Moreover, the statements

2

made by initial counsel are his own, not Beal's, and are subject to the litigation privilege because they are related to the allegations in the Complaint and were made *after* the litigation commenced. Third, the statements made by initial counsel originated from initial counsel and were not a republication of any statement from Beal. Thus, Beal cannot be held liable for those actions. Further, if any statement made by counsel was defamation (which they are not), those statements would be a deviation from counsel's agent relationship with Beal because counsel was retained to protect Beal from liability, not create it. Moreover, anything Beal told initial counsel was privileged. Thus, Count V of the Second Amended Complaint should be dismissed.

The remaining counts should be dismissed as they all improperly incorporate counts from the predeceasing count or are otherwise an attempt at a shotgun pleading.

## FACTS

The alleged incident occurred at an Orlando Magic-Washington Wizards game on March 21, 2023. (Sec. Am. Complaint, ¶¶ 10). After the game, Beal was exiting through the tunnel when a friend of Briffa's standing beside him made a comment to Beal. (Sec. Am. Compl., ¶ 22). Beal turned around and walked toward Briffa and his friend, and an incident ensued. (*Id.* at ¶¶ 23-31). Briffa has asserted assault and battery claims against Beal related to physical contact Beal made with

3

Briffa, in addition to a claim for defamation. (*Id.* at Counts I, II, and V).  Beal disputes the nature of the confrontation, but that is not at issue in this Motion. Pertinent to this Motion is what transpired in the days and weeks that followed.

On April 10, 2023, ESPN published an article in which Beal made certain statements at a press conference. (Sec. Am. Compl., Ex. A).  The alleged defamatory statement from Beal is as follows:

> Nobody wants to lose money.  I get it.  If you keep it about sports, I'm all for it. But I think it's when people start getting personal, talking about your family, talking about your character, your integrity towards the game. I think all of that, we can save it.  We can really keep those comments to ourselves.
>
> …
>
> I understand.  I go to casinos, I gamble, I understand that.  But I also understand it's probably a 99% chance I'm going to lose … I'm not siting here about to get angry at the dealer or angry at everybody else.

(Sec. Am. Compl., ¶ 78, Ex. A).  Notably, Mr. Briffa is not mentioned by name in this article.  In fact, the article specifically cites to the police report from the incident, which provides context.  In citing the police report, the article specifically notes that it was a friend of Briffa, not Briffa himself, that made inappropriate comments, which Beal was referencing at his press conference.  Indeed, the article states:

> According to a police report obtained by ESPN, an unidentified man remarked to Beal, "You made me lose $1,300 you f---."  Beal, according to the report, turned around and **walked toward a friend of the man who made the comment**, and swatted his right hand toward him, knocking the man's hat off and contact the left side of his head.

4

(hereinafter "Statement 1"). (Sec. Am. Compl., Ex. A, ¶ 2) (emphasis added). The ESPN piece was published eight (8) days before the lawsuit was originally filed on April 18, 2023. The first iteration of Plaintiff's Complaint did not assert a claim for defamation.

The second allegedly defamatory statement occurred on April 19, 2023. These statements were made by attorney Dan Morgan to TMZ, and includes the following:

- Morgan calling the lawsuit "frivolous litigation;"
- Morgan stating "[Briffa] is now trying to change the narrative" and;
- Morgan saying "We will make sure the standard is clear - you can't harass people, call them racial slurs, talk about their family, insult their character…and then turn around and sue them on top of that"

(hereinafter "Statement 2"). (Sec. Am. Compl., ¶ 81, Ex. B). Just like Statement 1, the TMZ publication encompassing Statement 2 also references the allegation from Briffa that "his friend made a comment about Beal." *Id*. Morgan does not say that Briffa made statements about Beal. Further, Morgan's comments were in response to Briffa filing suit, which at the time, only included Battery and Assault claims

against Beal.[1]  Briffa amended his pleadings to add a defamation claim after these statements were made.

# MEMORANDUM OF LAW

### a. Motion to Dismiss Standard

"When reviewing a motion under Rule 12(b)(6), a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Mac Isaac v. Twitter*, 557 F. Supp. 3d 1251 (S.D. Fla. 2021) (citing *Miccosukee Tribe of Indians of Fla. V. S. Everglades Restoration Alliance,* 304 F.3d 1076, 1084 (11th Cir. 2002).  This does not apply, however, to legal conclusions.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).

### b. Count V Fails to State a Claim

---

[1]  The Court can take judicial notice of the fact that initial counsel Dan Morgan's statements occurred on April 19, 2023 and the amended complaint was not filed until May 4, 2023.

Under Florida law, defamation is defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973) (citation omitted). To state a claim for defamation, a plaintiff must plausibly allege the following five elements: (1) publication by the defendant; (2) falsity; (3) the defendant acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Jews for Jesus v. Rapp,* 997 So. 2d 1098, 1106 (Fla. 2008).

Plaintiff does not plead defamation *per se* or defamation by implication. Rather, Plaintiff solely alleges general defamation. Florida law requires that any alleged defamation must be "of and concerning" the plaintiff. *See Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. 2d DCA 1997). As explained below, the statements at issue are not "of or concerning" Briffa.

**1. Both Statement 1 and Statement 2 are opinions.**

"Under the First Amendment there is no such thing as a false idea [or opinion]. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974). "True statements, statements that are not readily capable of being proven false, and statements of pure opinion are

7

protected from defamation actions by the First Amendment. *Turner v. Wells*, 879 F.3d 1254, 1263 (11th Cir. 2018) (internal quotations omitted). A "pure opinion" is one in which a defendant makes a comment based on facts set forth in the publication, or which are otherwise known or available to the reader or listener. *Id*. Mixed expressions of opinion occur when an opinion or comment is made which is "based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication." *Id*. (internal citations omitted). Whether a statement is one of fact or opinion or whether such statement is susceptible to defamatory interpretation are questions of law for a court. *Id*. 1263-64. Statements may constitute rhetorical hyperbole, which sometimes overlaps with pure opinion. *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006). "Although rhetorical hyperbolic statements may 'at first blush appear to be factual[,] … they cannot reasonably be interpreted as stating actual facts about their target." *Id.* at 1378-79. Whether a statement is one of opinion, rhetorical hyperbole, or of fact that is susceptible to defamatory interpretation are questions of law for the court." *Keller v. Mia. Hearld Publ'g Co.*, 778 F. 2d 711, 715 (11th Cir. 1985).

The Court need not go beyond the pleadings to determine whether or not these statements were opinion or fact. *See Turner*, *surpa*, 879 F.3d at 1263. When

analyzing the allegedly defamatory statements, as a matter of law there is no doubt that both Statement 1 and Statement 2 are pure opinion.

Statement 1 is merely Beal's subjective statement about what is or is not acceptable fan behavior at a basketball game. Indeed, Statement 1 explains Beal's opinion about what type of behavior is and is not acceptable at a basketball game. Further evidence that the statements are not about the Plaintiff but fan behavior in general is Beal's opinion about the atmosphere around sports gambling as he compared himself losing at a casino and not getting angry with the dealer. This generalized commentary is undoubtedly opinion or rhetorical hyperbole, which are not sufficient for a defamation claim. Statement 1 contains multiple comments made on facts available to the reader or listener, which qualify them as opinions under *Turner* because the reader or listener could agree or disagree with how fans should act at a basketball game without having any impact on their opinion of Plaintiff.

To the extent Briffa is seeking liability under the "group libel" doctrine[2], which is not pleaded, it would apply "only if, (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference of the member." *Thomas*, 699 So. 2d at 804. Indeed,

---

[2] Beal addresses this doctrine to demonstrate the futility of allowing Plaintiff leave to amend his defamation claim.

9

"[p]laintiffs face a difficult task when the statements concern groups; when a group is large, that is, composed of twenty-five or more members, courts consistently hold that plaintiffs cannot show the statements were 'of and concerning' them." *Id.* at 805. Here, Beal's statements were clearly of a large group (i.e. sports fans who gamble). Because the statements were directed to the group as a whole, and not any particular member, including Briffa, the theory of "group libel" would not apply.

Statement 2 is merely Morgan's own opinion (not Beal's) about the merits of this lawsuit and Morgan stating that Beal intends to mount a vigorous defense to what he believes, in his opinion, are not meritorious claims. Like Statement 1, Statement 2 contains multiple comments made on facts available to the reader or listener, which qualify them as opinions under *Turner* because the listener could have read the underlying complaint and agreed or disagreed with Statement 2 without having any impact on their opinion of Plaintiff. Lawyers offering advocating views on the merits of litigation against their clients do not constitute actionable against the client. Additionally, as explained further below, these statements are not actionable under the litigation privilege.

### 2. Both alleged defamatory statements are not of and concerning the Plaintiff.

Although Florida law does not require that the defamatory statement have the plaintiff's name, Florida courts have held that "the communication as a whole [must] contain[] sufficient facts or references from which the injured person may be

10

determined by the persons receiving the communication." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258-59 (S.D. Fla. 2021) (dismissing defamation claim where an individual reading the statement would not be able to identify the plaintiff within the publication itself); *see also Sloan v. Shatner,* 2018 WL 3769968 at *6 (M.D. Fla. June 22, 2018) (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997)) (dismissal because statement was not "of and concerning" plaintiff).  The relevant inquiry is whether an average reader of the publication could reasonably have concluded that the plaintiff was implicated. *Mac Isaac*, 557 F. Supp. 3d at 1258-59.  That is not the case here.

At the outset, it is critical to note that Statement 1 neither mentioned Briffa nor is "directed" at Briffa.  Statement 1, read or listened to as a whole, does the opposite.  Statement 1 plainly refers to Briffa's friend, as explained the ESPN article, the police report referenced within, and as Briffa concedes in his Second Amended Complaint as he explains that Beal reacted to comments made by Briffa's friend. *See* Sec. Am. Compl. at ¶ 22.  Indeed, Statement 1 does not mention Briffa by name at all.  Moreover, Statement 1 does not make any express or implied reference that Beal's comments were about Briffa.  The ESPN article expressly references the police report, which states that the comments were made by the unidentified friend of Briffa, not Briffa himself.  Then, in the next paragraph, Beal discusses, in generalities only, what he believes were inappropriate comments that crossed the

11

line. No reasonable person reading the ESPN article containing Statement 1 would have connected Beal's Comments to Briffa, particularly because Statement 1 references the comments Beal responded to from Briffa's friend. There is nothing that makes the reader or listener even infer that the statements were about Briffa. A reasonable listener or reader of Statement 1 would not understand Beal's commentary as stating an actual fact about Briffa.

The same is true for Statement 2. Beal's prior counsel's statements were made *after* the lawsuit was filed. Statement 2 explains Briffa's allegations, alleging an altercation with Beal after a friend of Briffa's made comments to Beal, and counsel's view on the legitimacy of these claims. These comments would be covered by the litigation privilege. The litigation privilege applies to all torts. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007). "[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior ... so long as the act has some relation to the proceeding." *Id.* (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, P.A. v. United States Fire Insurance Co.*, 639 So.2d 606 (Fla.1994) (where the Florida Supreme Court was answering a certified question from the Eleventh Circuit regarding the application of the litigation privilege)). Attorney Morgan's comments were made *after* litigation has ensued, establishing the first prong of the litigation privilege. The

12

second prong—relation to the proceeding—is also established because Attorney Morgan's statements in Statement 2 are about the veracity of the claims against Beal and the intend to vigorously defend those claims. Indeed, there is no doubt that these comments were made about the merits of the litigation and connected to the litigation. Consequently, the litigation privilege applies to Statement 2 and Plaintiff cannot bring an action of defamation related to Statement 2.

### 3. Statement 2 was not made by Beal and is not a republication.

Even if the Court finds that the litigation privilege did not apply, Statement 2 cannot subject Beal to liability because he did not make it. This is fundamental. *Jews for Jesus,* 997 So. 2d at 1106 (reciting elements of defamation, requiring publication by the Defendant). Plaintiff seeks to overcome this obvious shortcoming by alleging that Morgan's comments to TMZ "re-affirm[ed]" the comments that Beal made to ESPN in Statement 1 on April 10, 2023. (Sec. Am. Compl., ¶ 82). However, this is demonstrably not true. In order to prevail against Beal on a theory of republication, Plaintiff must show that *Beal* originally published the statement. *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014). Only one who actually publishes the statement can be subject to tort liability for defamation. *Jews for Jesus*, 997 So. 2d at 1106. If Beal did not make the original statement, he cannot be liable for supposed republication.

A recent decision from the Middle District of Florida is analogous with respect to the fact that Beal cannot be considered to have made Statement 2 at all. See *Markle v. Markle*, 2020 WL 2711341 Slip Copy (M.D. Fla. Mar. 30, 2023). In *Markle*, the plaintiff accused the defendant of providing information via her agent and communications secretary that was later published in a book by someone else. *Id*. at *5. The court held that the defendant could not be held liable for this on the basis of the fact that the plaintiff was not responsible for the publication. *Id*. at *7. The court noted that the defendant was not quoted or even cited as a source in the publication. *Id.* The same is true here.

The TMZ piece containing Statement 2 does not attribute Morgan's comments to Beal, or even suggest that Beal is the source of Morgan's statement of expression about Briffa's lawsuit. The TMZ piece does not refer to or quote Beal's prior comments on April 10, 2023 about the incident. The statements by Morgan are so fundamentally different from Beal's prior comments that such statements cannot be deemed a publication by Beal at all, let alone a republication.

With respect to the allegation that Statement 2 reaffirmed or republished Beal's original statement, Statement 1 made by Beal and Statement 2 made by Morgan are fundamentally different. Statement 1 is nothing more than Beal's opinion about what is or is not appropriate to say to an athlete in the described context. This is pure opinion and itself grounds for dismissal. See Section B.1.,

14

*infra*. In those statements, Beal was merely addressing his opinion regarding fan behavior and sports gambling *prior* to the litigation. This context is important when compared to Statement 2. Morgan's comments came after the lawsuit was filed and are clearly directed at the allegations made by Briffa in the Complaint. Beal did not call the lawsuit frivolous on April 10, 2023, because there was no lawsuit. Beal did not say or suggest that Briffa was changing the narrative. Likewise, Beal's opinion that comments should not cross the line to personal attacks is fundamentally different than Morgan's statement that "you cannot harass people, and then turn around and sue them." The statements made by Morgan cannot be deemed to be a republication of Beal's comments because Morgan's statements were his pointed critiques of a lawsuit when Statement 1 was made. Moreover, there is no record that Beal ever authorized Morgan to make these statements.

Even assuming *arguendo* that Statement 2 could be considered a republication of Statement 1, it was not reasonably foreseeable by Beal that it would be republished by his own attorney. See *Klayman*, 22 F. Supp. 3d at 1251-52 (citing *Granda-Centeno v. Lara,* 489 So. 2d 142, 143 n. 3 (Fla. 3d D.C.A 1986). With respect to a defamation claim on a republication theory, "[T]he original author is not responsible if the republication is not the natural and probable consequence of his act, but is the independent unauthorized act of a third party." *Id*. Morgan's statement to TMZ cannot be considered reasonably foreseeable to Beal for several

15

reasons. First, it is not remotely similar to Beal's original statement, as noted. Second, Morgan making a statement that would subject Beal to liability following the filing of the original complaint is not a natural and probable consequence of the attorney-client relationship. The province of an attorney is to defend its client, not subject that client to further liability. To the extent an attorney makes a claim that subjects a client to further liability, it is a deviation from the agency relationship between the client and the attorney. Consequently, Count V must be dismissed as to Statement 2 because Beal did not publish that statement.

    **c. Counts I and II should be dismissed as a "Shotgun" Pleading.**

A "shotgun pleading" refers to a complaint that violates Rule 8(a)(2), which requires a plaintiff to include a "short and plain statement of the claim," or Rule 10(b), which requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P 8(a)(2), 10(b); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

The Eleventh Circuit has identified four categories of shotgun pleadings: (1) complaints "containing multiple counts where each count adopts the allegations of all preceding counts"; (2) complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) complaints that fail to separate each cause of action or claim for relief into different

16

counts; and (4) complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323. "[P]leading claims in this fashion imposes a heavy burden on the trial court, for it must sift each count for allegations that pertain to the cause of action purportedly stated and, in the process, disregard allegations that only pertain to the incorporated counts." *Hallback v. Carrington Mortg. Servcs., LLC*, No. 21-CV-1028-WFJ-SPF, 2022 WL 685663 at *8 (M.D. Fla. Mar. 8, 2022) (citing *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006)).

Here, the Second Amended Complaint violates Rule 8(a)(2) and 10(b) because Count I and II adopt the allegations of all preceding counts. The Second Amended Complaint requires the Court to sift each count for allegations that pertain to the cause of action purportedly stated and, in the process, disregard allegations that only pertain to the incorporated counts, which is improper. As a result, Count I and II should be dismissed.

## **CONCLUSION**

Count V of the Seconded Amended Complaint must be dismissed because it fails to state a claim. Specifically, the statements on which Briffa alleges defamed him are not about him. Rather, they are general opinions about fan conduct at a sporting event. Additionally, the publications make clear that the generalized comments being made are not attributable to Briffa, or about anything Briffa allegedly said. Moreover, the statements made by counsel are subject to the litigation privilege because they are related to the allegations in the Complaint and were made *after* the litigation commenced. The statements made by counsel were not a republication of any statement from Beal. Thus, Beal cannot be held liable for those actions. Further, if any statement made by counsel was defamatory in nature (which they are not), those statements would be a deviation from counsel's agent relationship with Beal because counsel was retained to protect Beal from liability, not create it. Thus, Count V of the Second Amended Complaint should be dismissed.[3]

Counts I and II should be dismissed as an improper "shotgun" pleading as they incorporate the predecessor counts and inapplicable information to each count.

---

[3] Beal seeks, under Rule 12(f), to strike the first footnote of the Second Amended Complaint, which is, to put it mildly, wholly irrelevant, scandalous, and impertinent, and are included for no reason other than to defame Beal in a privileged court filing. *Blake v. Batmasian,* 318 F.R.D. 698, 700 (S.D. Fla. 2017).

WHEREFORE, Defendant, Bradley Beal, respectfully requests that this Court grant his Motion to Dismiss, and for such other relief deemed just and appropriate.

## LOCAL RULE 3.01(g) CERTIFICATION

WE CERTIFY that the movant has conferred with the Mary Sherris, counsel for Briffa, via telephone conference on November 8, 2023, and counsel for Briffa opposes the relief sought in this motion.

By: */s/ Peter R. Goldman*
Peter R. Goldman, Esq.
Florida Bar No.: 860565
Daniel L. Alvarez, Esq.
Florida Bar No.: 1010172
**Nelson, Mullins, Riley & Scarborough LLP**
100 SE 3rd Ave Ste 2700
Fort Lauderdale, FL 33394
(954) 764-7060/ 713-0976 (Fax)
peter.goldman@nelsonmullins.com
stacy.brown@nelsonmullins.com
daniel.alvarez@nelsonmullins.com
traci.lewis@nelsonmullins.com
*Counsel for Bradley Beal*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 13, 2023, the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that the foregoing document was served on counsel whom have provided designated e-mail addresses for service via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Peter R. Goldman*
Peter R. Goldman